1  PHILIP S. WARDEN (SBN 54752)
    philip.warden@pillsburylaw.com
2  NAN MCGARRY (SBN 318677)
    nan.mcgarry@pillsburylaw.com
3  PILLSBURY WINTHROP SHAW PITTMAN LLP
4  Four Embarcadero Center, 22nd Floor
   San Francisco, CA 94111-5998
5  Telephone:    415.983.1000
   Facsimile:    415.983.1200
6

7  *Attorneys for Stephen A. Finn*
   *and Winery Rehabilitation, LLC*
8

9              **UNITED STATES BANKRUPTCY COURT**
10             **NORTHERN DISTRICT OF CALIFORNIA**
               **SANTA ROSA DIVISION**
11

12 In re                                      Case No. 17-10067-RLE
13       SVP,                                 CHAPTER 11
14              Debtor.
                                             **SECURED CREDITORS' RESPONSE TO**
15                                           **TRUSTEE'S OBJECTION TO CLAIMS OF**
                                             **STEPHEN A. FINN AND WINERY**
16                                           **REHABILITATION, LLC**
17                                           Hearing:    January 31, 2020
                                             Time:       10:00 a.m.
18                                           Place:      1300 Clay Street, Room 201
                                                         Oakland CA 94612
19                                           Judge:      Hon. Roger L. Efremsky
20

21 **TO THE HONORABLE ROGER L. EFREMSKY, UNITED STATES CHIEF**
   **BANKRUPTCY JUDGE, TRUSTEE, DEBTORS, AND ALL INTERESTED PARTIES**:
22

23       Stephen A. Finn ("Finn") and Winery Rehabilitation, LLC ("WR," and together with Finn,

24 the "Secured Creditors"), through their undersigned counsel, submit this response to the *Objection*

25 *to Claims* (the "Objection") filed by Andrea A. Wirum, chapter 11 trustee of the estate of the above

26 debtor (the "SVP Trustee") [Dkt. No. 52], and respectfully represent as follows:

27

28

-1-

4851-6345-6176

## BACKGROUND

### A. WR and Finn Proofs of Claim

1. WR is the successor in interest to Silicon Valley Bank ("SVB") with regard to two loans made by SVB to both SVP and SVC pursuant to a Loan and Security Agreement dated May 17, 2012 (the "Loan Agreement"). These loans were secured by duly perfected first-priority liens on and security interests in (i) all property of SVP, including equipment, machinery, inventory, accounts, intangibles, intellectual property, (ii) the real property of SVP, and (iii) all replacements and proceeds of the foregoing. Under the terms of the Loan Agreement, WR is entitled to reimbursement of attorney's fees and expenses in connection with claims asserted against WR arising from or relating to the Loan Agreement. WR filed Claim No. 11-1 on April 10, 2017 (the "WR Claim," as amended) on account of the obligations arising under the Loan Agreement.

2. Finn, SVP, and SVC are parties to a Subordinated Secured Grid Promissory Note dated May 17, 2012 (the "Grid Note"). The Grid Note was secured by a subordinated perfected security interest in all right, title and interest of SVP and SVC in substantially all of their assets. Under the terms of the Grid Note, Finn is entitled to reimbursement of attorney's fees and expenses in connection with claims asserted against him arising from or relating to the Grid Note. Finn filed Claim No. 13-1 on April 10, 2017 (the "Finn Claim," as amended, and together with the WR Claim, the "Secured Creditors' Claims") on account of the obligations arising under the Loan Agreement.

### B. Sale of the Winery and Allowance of Secured Creditors' Claims

3. On August 21, 2018, the Court ordered the appointment of a chapter 11 trustee. The Office of the United States Trustee selected Timothy W. Hoffman (the "Original Trustee"), whose appointment was approved by the Court on August 29, 2017 [SVC Dkt. No. 199]

4. Pursuant to this Court's order dated December 11, 2017 [SVC Dkt. No. 249] (the "Sale Order"), the Court approved the Original Trustee's proposed sale of the collateral securing the Secured Creditors' Claims. Out of the sale proceeds, upon closing of the sale on or about January 10, 2018 and pursuant to the Sale Order, the Original Trustee paid the Secured Creditors

-2-

4851-6345-6176

on January 11, 2018 on account of their claims including post-petition interest, fees, and expenses known as of the payment date (the "Sale Proceeds Payment").

**C. Claim Objection**

5.        On May 22, 2018, Ross and Kelleen Sullivan (the "Sullivans") filed a *First Amended and Restated Objection to Claims 11 and 12 Filed By Winery Rehabilitation, LLC* [SVC Dkt. No. 340] (the "Sullivan Claim Objection"), seeking to disallow the WR Claim. WR opposed the Sullivan Claim Objection by, among other things, filing oppositions [*see* SVC Dkt. Nos. 350 and 352] and appearing at a hearing before the Court on June 20, 2018. At the hearing, the Court declined to disallow the WR Claim, finding that it was an allowed claim as of January 10, 2018 and that although the amount asserted as of January 11, 2018 had been paid in full,  WR had a contingent claim for, at a minimum, attorney's fees incurred in protecting WR's interests. *See* Tr. June 20, 2018 Hearing [SVC Dkt. No. 354]; *Order Regarding First Amended and Restated Objections to Claims 11 and 12 Filed by Winery Rehabilitation, LLC* (the "Sullivan Claim Objection Order") [SVC Dkt. No. 368].

**D. Adversary Proceeding and District Court Action**

6.        On July 14, 2017, while still the debtors-in-possession, the Sullivans commenced an adversary proceeding in this Court (No. 17-01023 (the "Adversary Proceeding")) against Mr. Finn and Angelica de Vere, alleging estate causes of action and seeking general and special damages and restitution and disgorgement of all money or property acquired in connection with, among other things, the Loan Agreement.

7.        On October 6, 2017, after being removed as debtors-in-possession and in their capacity as equity holders of the Debtor, the Sullivans commenced a proceeding in the United States District Court for the Northern District of California (Case No. 3:17-cv-05799 (the "District Court Action")) against Stephen A. Finn and Trust Company of America, in which the Sullivans alleged purportedly individual causes of action seeking essentially the same relief as the Adversary Proceeding. The District Court Action is ongoing, and the Sullivans continue to challenge the Grid Note.

-3-

4851-6345-6176

## E. The Secured Creditors Continued to Incur Fees and Expenses

8.　　After receiving the Sales Proceeds Payment on account of their Secured Creditors' Claims, the Secured Creditors continued to incur attorney's fees and expenses on account of the Claims Objection, Adversary Proceeding, and District Court Action. Each one of these proceedings challenged the Secured Creditors' right to payment under the terms of their financing agreements with SVP and, accordingly, this caused the Secured Creditors' Claims to increase in the amount of those attorney's fees and expenses. The Secured Creditors have amended the WR Claim and the Finn Claim and intend to continue to amend them to account for the full amount of attorney's fees and expenses incurred in defending its interests under the Loan Agreement and Grid Note, both of which are the basis for allowed secured claims in this case.

## F. Settlement Agreement and Compromise Order

9.　　In the spring of 2019, five former employees of SVC including Ms. DeVere (the "Former Employees"), the Secured Creditors, and the Original Trustee entered into a settlement agreement (the "Settlement Agreement") that, among other things, resolves the Former Employees' litigation against SVC in Napa County Superior Court for wrongful termination, breach of contract, slander and civil assault ("the Napa County Action"), the Former Employees' proofs of claims, and the Adversary Proceeding. Additionally, the Settlement Agreement provided that the Secured Creditors' Claims would be subordinated to all trade debt reflected in the Debtors' schedules and proofs of claim then filed in the Debtors' bankruptcy cases.

10.　　The Settlement Agreement provides in part that, "Neither the Finn Party Claims nor the SVP Intercompany claim are being liquidated or otherwise resolved by the Agreement." Settlement Agreement, ¶ 2. The Settlement Agreement also provides that "[t]he Settling Creditors and the Trustee shall bear all their own costs, expenses and attorneys' fees incurred in connection with the Napa County Action, Adversary Proceeding, District Court Action and the Bankruptcy Cases, and the negotiation, preparation and application for Bankruptcy Court approval of this Agreement." *Id.* ¶ 6.

-4-

4851-6345-6176

11. On April 3, 2019, the Original Trustee filed his *Application for Order Authorizing Trustee to Enter into Compromise with Various Creditors and Litigants* (the "Compromise Motion") [SVC Dkt. No. 422]. The Compromise Motion, in relevant part, states that the Secured Creditors' Claims "will not be liquidated or otherwise resolved and settled as part of this compromise." Compromise Motion, ¶ 17.

12. On May 20, 2019, the Court entered its *Order Authorizing Trustee to Enter Into Compromise Controversy with Various Creditors and Litigants* (the "Compromise Order") [SVC Dkt. No. 435]. The Compromise Order, in relevant part, states "[c]onsistent with paragraph 2 of the Settlement Agreement, nothing in this order allows or disallows [the Secured Creditors' Claims]." Compromise Order, ¶ 9.

## ARGUMENT

### A. Settlement Agreement Does Not Waive Secured Creditors Claims

#### a. The SVP Trustee's Argument Ignores Mutual Intention of the Parties to the Settlement Agreement

13. In the Objection, the SVP Trustee asserts that the Secured Creditors waived their claims for attorney's fees and expenses, with the exception of those fees incurred in the Adversary Proceeding. This argument ignores language of the Settlement Agreement, the Compromise Motion, and the Compromise Order (discussed above) which explicitly preserve the Secured Creditors' right to pursue and recover on account of their allowed secured claims arising from the Loan Agreement and the Grid Note. Additionally, the SVP's Trustee's argument is inconsistent with the mutual intention and understanding of the parties to the Settlement Agreement at the time they entered into it.

14. The mutual intention of the parties can be seen in the language used by the representative of the SVP estate, the Original Trustee. In his *Notice of Trustee's Intention to Compromise Controversy with Various Creditors and Litigants* (the "Compromise Notice") [SVC Dkt. No. 408], after describing the Secured Creditors' Claims for attorney's fees and expenses, the Original Trustee stated that the Secured Creditors' Claims "are not being liquidated or otherwise resolved and settled as part of this compromise." Compromise Notice, Page 3, Lines 9-10. In his

-5-

4851-6345-6176

status conference statement filed on May 13, 2019 (the "Status Conference Statement") [SVC Dkt. No. 433], the Original Trustee stated, "[i]n light of still pending litigation in the District Court between Mr. Stephen Finn and Winery Rehabilitation, on the one hand, and the Sullivans, on the other hand, it does not appear possible to liquidate the claims held by Mr. Finn and Winery Rehabilitation until that litigation is resolved." Status Conference Statement, Page 2, Lines 21-24. And at the May 20, 2019 hearing on the Compromise Motion, the Original Trustee stated that the Secured Creditors' Claims "are not being liquidated." Tr. May 20, 2019, page 3, lines 7-11.

15.     This understanding that the parties did not intend to impact or impair the Secured Creditors' Claims is shared by the remaining parties to the Settlement Agreement, the Former Employees. Counsel to the Former Employees understood the intention of the parties to the Settlement Agreement to be that the compromise did not affect the Secured Creditors' Claims at all. *See* Declaration of Jonathan M. Cohen (the "Cohen Declaration"), ¶ 13.   There was never any intent or discussion, much less agreement, to waive or impair the Secured Creditors' Claims. *See* Cohen Declaration, ¶ 14.

16.     To accept the SVP Trustee's argument that the Secured Creditors' Claims were waived or otherwise disposed of by the Settlement Agreement would be to ignore the language of the documents filed in connection with the Settlement Agreement and the mutual intention of the parties. It would be inequitable to ignore the intent of the parties to the Settlement Agreement and disallow the Secured Creditors' Claims.

### b. Under California Law, the Settlement Agreement Should be Interpreted to Preserve the Secured Creditors' Claims for Attorney's Fees

17.     The Settlement Agreement is governed by the laws of the State of California and those laws are to be used in construing or interpreting the agreement. Settlement Agreement, ¶ 16. Under California law, a settlement agreement is contract, and legal principles which apply to contracts generally apply to settlement agreements. *In re Clawson*, 434 B.R. 556, 569 (N.D. Cal. 2010).

18.     The Settlement Agreement "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable

-6-

and lawful." Cal. Civ. Code § 1636; *see Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014) ("California law establishes that the mutual intent of the parties at the time a contract is formed governs interpretation"). The language used by the representative of the SVP estate (the Original Trustee) and the sworn testimony of counsel to the Former Employees shows that the mutual intention of the parties at the time the parties entered into the Settlement Agreement was for the Secured Creditors' Claims for attorney's fees to be unaffected.

19. To the extent that the provisions of the Settlement Agreement are inconsistent— *i.e.,* to the extent that the language in paragraph 2 of the Settlement Agreement is inconsistent with the language in paragraph 6—the inconsistency should be reconciled by such an interpretation that will give some effect to the inconsistent clauses, subordinate to the general intent and purpose of the Settlement Agreement. Cal. Civ. Code § 1652; *see Estate of Petersen,* 28 Cal. App. 4th 1742, 1753-54 n.4 (1994) ("Contradictory or inconsistent provisions of a contract are to be reconciled by interpreting the language in such a manner that will give effect to the entire contract."); *see also* Civ. Code § 1650 ("Particular clauses of a contract are subordinate to its general intent").

20. As noted above, paragraph 2 of the Settlement Agreement states in relevant part, "[n]either the Finn Party Claims nor the SVP Intercompany claim are being liquidated or otherwise resolved by this Agreement." Settlement Agreement, ¶ 2. The "Finn Party Claims," as defined in paragraph 2, mean the Secured Creditors' Claims. In the wake of the Sale Proceeds Payment, the Secured Creditors' Claims are claims for attorney's fees and expenses only.[1] Thus, the SVP Trustee's interpretation of the Settlement Agreement would leave the last two sentences of paragraph 2 of the Settlement Agreement without meaning. On the other hand, paragraph 6 retains meaning even if it is not construed to effect a waiver of the "Finn Party Claims," because paragraph 6 extends to a broad range of attorney's fees and costs that are not part of the Finn Party Claims, such as those incurred in connection with the Napa County Action. To the extent of any inconsistency, therefore, paragraph 2, as the more specific provision, should take precedence over

---

[1] The Secured Creditors reserve their rights to amend their claims to include additional attorney's fees and expenses, as well as any other amounts arising under the Loan Agreement, Grid Note, indemnity agreements, or section 503 of the Bankruptcy Code.

-7-

paragraph 6. *See* Cal. Code Civ. P. 1859 ("when a general and a particular provision are inconsistent, the latter is paramount to the former"). The same result follows under the rule that, "[w]here two clauses of an agreement are repugnant, the first shall be received and the latter rejected." *Hobson v. Mut. Ben. Health & Acc. Ass'n*, 99 Cal. App. 2d 330, 335 (1950) (quoting Burns v. Peters, 5 Cal. 2d 619, 623 (1936) (internal quotation marks omitted). Accordingly, under California law of contract interpretation, to the extent that the Court does not otherwise overrule the SVP Trustee's Objection to Claim, the Court should find that the Settlement Agreement did not waive the Secured Creditors' Claim for attorney's fee and overrule the Objection to Claim.

### c. The SVP Trustee is Estopped from Arguing that the Secured Creditors Waived their Claim to Attorney's Fees.

21. This case presents an unusual scenario where a second chapter 11 trustee has stepped in as the representative of a debtor's estate. Notwithstanding this change of representatives, the SVP estate remains the party with which the Secured Creditors and Former Employees entered into the Settlement Agreement.

22. As discussed above, the Original Trustee, who was the SVP estate representative at the time of the Settlement Agreement, took the position on multiple occasions that the Secured Creditors' Claims for attorney's fees were not being impacted by the Settlement Agreement. *See e.g.* Compromise Notice, Page 3, Lines 9-10; Status Conference Statement, Page 2, Lines 21-24; Tr. May 20, 2019, page 3, lines 7-11. Now, the SVP Trustee's Objection asserts the opposite, that the Secured Creditors waived a significant portion of their claims through the terms of the Settlement Agreement. The SVP Trustee should be estopped from making this argument.

23. In the Ninth Circuit, judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Rissetto v. Plumbers & Steamfitters Local* 343, 94 F.3d 597, 600 (9th Cir.1996). In determining whether to apply the doctrine, a court should consider: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *In*

-8-

4851-6345-6176

*re Hoopai*, 581 F.3d 1090, 1097 (9th Cir.2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

24.    Here, the SVP Trustee's position that the Settlement Agreement waived or resolved the Secured Creditors' Claims is clearly inconsistent with the Original Trustee's position at the time of the Settlement Agreement; the Original Trustee represented on multiple occasions in both written filings and oral arguments before the Court that the Settlement Agreement did not resolve or liquidate the Secured Creditors' Claims; and allowing the SVP Trustee to take this new inconsistent position on the interpretation of the Settlement Agreement would allow the SVP Trustee both to derive an unfair advantage and to impose an unfair detriment on the Secured Creditors. Accordingly, the SVP Trustee should be estopped from taking a position inconsistent with the position that it represented previously to the Court.

**B.  Secured Creditors are Entitled to Recover their Attorney's Fees and Expenses**

25.    The SVP Trustee's argument in the Objection misunderstands the propositions for which *Siegel*[2] stands and the basis for the Secured Creditors' Claims.

**a.  The Secured Creditors' Claims are Allowed Secured Claims and a Final Judgment for *Res Judicata* Purposes**

26.    First, *Siegel* stands for the proposition that the deemed allowance of a proof of claim is a final judgment for *res judicata* purposes. *Siegel*, 143 F.3d at 529. Accordingly, once the Secured Creditors' Claims were paid through the Sale Proceeds Payments, they were deemed to be allowed and a final judgment for *res judicata* purposes. See Sullivan Claim Objection Order, ¶ 2.

---

[2] *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th Cir. 1998)

-9-

4851-6345-6176

### b. The Secured Creditors' Claims are Post-Petition Obligations

27.    Second, *Siegel* stands for the proposition that if a debtor decides to "return to the fray" post-petition, the attorney's fees incurred by a creditor in defending its claim are post-petition obligations and not prepetition obligations. *Siegel*, 143 F.3d at 533.

28.    Here, the Secured Creditors' Claims were allowed on or about January 10, 2018. The SVP debtor and the Sullivans had the ability to cease their attacks on the Secured Creditors' Claims but continued to challenge those claims. As a result, the Secured Creditors were forced to incur attorney's fees and expenses to defend their already allowed secured claims. To the extent that the Court determines these fees and expenses fall under *Siegel*, they are post-petition obligations incurred by the SVP estate.

29.    The SVP Trustee's Objection seeks to distinguish between the actions taken by the Original Trustee in the Adversary Proceeding and the Sullivans in their Claim Objection and District Court Action. In doing so, the SVP Trustee is arguing that because the Sullivans had been replaced by a chapter 11 trustee, their actions in bringing and prosecuting the Sullivans' Claim Objection and District Court Action do not constitute a "return to the fray" and the Secured Creditors' attorney's fees and expenses incurred in defending their claim would not be post-petition obligations against the SVP estate under *Siegel*. The Secured Creditors acknowledge that the Sullivans were not the debtor-in-possession and had been replaced by the Original Trustee at the time the Sullivans' Claim Objection and the District Court Action were filed. However, the Sullivans are the equity interest holders in not only SVP, but SVC as well. They were responsible for filing the Adversary Proceeding during their tenure as debtor-in-possession and once they lost control of that lawsuit after being replaced by the Original Trustee, they brought the District Court Action seeking essentially the same relief as the Adversary Proceeding.

30.    The chapter 11 case is unusual in that there will likely be sufficient funds to pay all of the estates creditors and return value to the equity interest holders, the Sullivans. The Secured Creditors believe that due to the special nature of the Sullivans' interest in this case, they cannot be considered in the same way as an out-of-the-money equity interest holder in a more typical case

-10-

4851-6345-6176

might be. Here the Sullivans have continued to challenge the Secured Creditors' Claims in an attempt to either enrich the SVP estate (to their ultimate benefit) or enrich themselves personally. This constitutes a "return to the fray" and the attorney's fees and expenses incurred by the Secured Creditors in response to this return properly implicate *Siegel* and should be found to be post-petition obligations.

**c. The Secured Creditors' Claims are Oversecured and Any Portion Determined to be Pre-Petition Claims are then Properly Included Under Section 506(b)**

31. Third, the Secured Creditors' Claims are allowed secured claims subject to *res judicata* and the only determination is whether the attorney's fees and expenses incurred thereunder are secured claims under section 506(b) of the Bankruptcy Code or *Siegel* claims. To the extent that this Court determines that *Siegel* does not apply to certain portions of the Secured Creditors' Claims, those amounts should properly be included in the Secured Creditors' Claims as secured claims under section 506(b) of the Bankruptcy Code.

32. Bankruptcy Code § 506(b) provides that the claim of an oversecured creditor "shall be allowed ... interest ... and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

33. Section 506(b) permits oversecured creditors to claim attorney's fees and costs:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Thus, a creditor is entitled to postpetition attorney's fees and costs if: (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement. *Kord Enters. II v. Cal. Commercial Bank (In re Kord Enters. II)*, 139 F.3d 684, 687 (9th Cir. 1998).

34. First, as discussed above, the Secured Creditor Claims are allowed secured claims under *Siegel*. Second, the Secured Creditors are oversecured. Based on the Operating Report for

-11-

4851-6345-6176

Filing Period Month Ended 12/31/2019 filed by the accountant for the SVP Trustee [Dkt. No. 69], the SVP estate has a cash balance in excess of the Secured Creditors' Claims, even accounting for administrative expenses and the Secured Creditors' agreement to subordinate their claims to the SVP's trade debt. Third, the Secured Creditors reasonably incurred attorney's fees and costs in defending their claims. Fourth, both the Term Loan Agreement and the Grid Note include provisions that allow for the recovery of attorney's fees and expenses. Accordingly, to the extent the Court determines that the Secured Creditors' Claims include amounts that not *Siegel* claims, those amounts should be included in the Secured Creditors' Claims under section 506(b) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Stephen A. Finn and Winery Rehabilitation, LLC respectfully request that the Court overrule the Objection, and grant such other relief as the Court deems appropriate.

Dated: January 13, 2020

By  */s/ Philip S. Warden*
         Philip S. Warden

Philip S. Warden (SBN 54752)
Nan McGarry (SBN 318677)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:415.983.1000
Facsimile: 415.983.1200
philip.warden@pillsburylaw.com
nan.mcgarry@pillsburylaw.com

*Attorneys for Stephen A. Finn
and Winery Rehabilitation, LLC*

-12-

4851-6345-6176